Argued and submitted November 6, affirmed December 27, 2000

In the Matter of the Estate of
Rachel E. Fleenor, Deceased.

Daryl L. FLEENOR,
*Appellant,*

*v.*

Deana WILLIAMSON,
as guardian ad litem for
Robert Daryl Fleenor
and Alexandria Marie Sacha Fleenor,
Minor Children,
*Respondent.*

(9505-90754; CA A108731)

17 P3d 520

Gary L. Vigna argued the cause for appellant. With him on the briefs was Harris & Vigna.

Fred C. Nachtigal argued the cause and filed the brief for respondent.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

## HASELTON, J.

Appellant Daryl Fleenor (Daryl)[1] appeals from a probate court order denying his petition to set aside an unqualified disclaimer executed pursuant to Oregon's Uniform Disclaimer of Transfers by Will, Intestacy or Appointment Act (Uniform Disclaimer Act), ORS 112.650 *et seq.* Daryl assigns error to the probate court's conclusion that it had "no authority" either to set aside or reform the disclaimer based on Daryl's unilateral mistake of law regarding the disclaimer's effect. We affirm.

The facts are undisputed. Daryl and Gary Fleenor are brothers. In 1978, their mother, Rachel, executed a will designating Daryl and Gary as the sole and equal residuary beneficiaries of her estate. On January 18, 1995, Rachel died, leaving her home in Southeast Portland as the only asset of her residuary estate. At the time of Rachel's death, and for some time before, Gary, who has severe physical disabilities, had been living in her home.

Daryl was concerned about Gary's living arrangements and care and wanted to ensure that his brother had a "decent place to live." Consequently, he conferred with Gary's attorney to explore ways in which he could transfer his one-half residuary interest in Rachel's home to Gary. Based on his discussions with the attorney, Daryl understood that he could achieve that result by executing a disclaimer pursuant to ORS 112.650 *et seq.* Consequently, on April 20, 1995, Daryl signed the following disclaimer prepared by the attorney:

"1.   I, Daryl Lee Fleenor, one of the beneficiaries under the Will of the Decedent herein, pursuant to ORS 112.650 - 112.667, the Uniform Disclaimer of Transfers by Will, Intestacy or Appointment Act, hereby disclaim my entire interest in the estate of my mother * * *.

"2.   This disclaimer is delivered to Gary Lee Fleenor, Personal Representative of the estate of the above-named Decedent, either in person or by certified mail.

---

[1] For convenience of reference, the opinion refers to members of the Fleenor family by their given names.

"3. I have not accepted any of the property or interest or benefit under the estate of the decedent.

"4. This disclaimer is irrevocable."

Daryl would not have executed the disclaimer but for his belief, based on the attorney's advice, that the effect of the disclaimer would be to transfer Daryl's interest in the home to Gary.

Daryl was mistaken about the legal effect of the disclaimer. Rather than conveying Daryl's interest to Gary, the disclaimer had the effect of conveying Daryl's interest to Daryl's minor children.[2] In particular, under ORS 112.657(1),[3] the disclaimers functioned to treat Daryl's interest in the estate as if he had predeceased decedent. *See also* ORS 112.395.[4]

By February 1999, Daryl was aware of the disclaimer's true legal effect. The estate's personal representative, joined by Daryl, petitioned the probate court to set aside or reform the disclaimer as being the product of a mistake of law. The personal representative and Daryl contended that rescission or reformation (converting the disclaimer to an assignment to Gary) would comport with equity because enforcement of the disclaimer would confer an unintended windfall on Daryl's minor children. Respondent, as guardian *ad litem* for the children, countered that the disclaimer was

---

[2] Respondent is Daryl's former wife, who is acting as guardian *ad litem* for her two minor children.

[3] ORS 112.657(1) provides, in part:

"Unless the decedent or donee of the power has provided for another disposition, the property or interest disclaimed devolves:

"(a) As to a present interest, as if the disclaimant had predeceased the decedent or, if the disclaimant is designated to take under a power of appointment exercised by a testamentary instrument, as if the disclaimant had predeceased the donee of the power[.]"

[4] ORS 112.395 provides:

"When property is devised to any person who is related by blood or adoption to the testator and who dies before the testator leaving lineal descendants, the descendants take by representation the property the devisee would have taken if the devisee had survived the testator, unless otherwise provided in the will of the testator. Unless otherwise provided in the will of the testator, one who would have been a devisee under a class gift if the person had survived the testator is treated as a devisee for purposes of this section if death occurred after execution of the will."

binding and irrevocable and that a unilateral mistake of law could not support either rescission or reformation of the disclaimer.

The probate court entered an Order Denying Rescission of Disclaimer. In a letter opinion, the court explained that it denied the petition because it had "no authority to grant relief in this matter and cannot nullify the disclaimer." Ultimately, the probate court issued an order approving the distribution of the estate's residuary: 50 percent to Gary and 50 percent by representation to Daryl's children.

■ On appeal, Daryl contends that the probate court's denial of relief,

> "ignores the basic tenet of the law of rescission, cancellation and reformation of instruments: all written instruments, contacts and agreements may be rescinded, canceled and reformed, including leases, deeds, mortgages, trust deeds and land sale contracts. * * * The fact that legal title may have inadvertently vested in Daryl Fleenor's children as a result of the Disclaimer does not preclude a court sitting in equity from rescinding, canceling, or reforming the disclaimer to correct a mistake."

We understand the probate court's denial of relief to have been based on a conclusion of law, namely, that a disclaimer cannot be set aside or reformed based on the disclaiming party's unilateral mistake as to its legal effect. We review that determination for errors of law. *See, e.g., Sheldon v. Sheldon*, 163 Or App 256, 259, 987 P2d 1229 (1999).

■■ The issue here is one of first impression in Oregon: Can an heir who has executed a complete and unconditional disclaimer of an interest in an estate under ORS 112.650 *et seq.* later revoke or reform that disclaimer based on a unilateral mistake of law?[5]

---

[5] In so framing the issue, we note that, at oral argument, Daryl attempted to argue that the operative mistake was mutual, rather than unilateral, because both Daryl and Gary were mistaken as to the disclaimer's legal effect. However, Gary was not a party to the disclaimer, merely an intended beneficiary, and gave no consideration for its execution. Consequently, the mistake was unilateral, not mutual. *See Manning Lumber Co. v. Voget*, 188 Or 486, 499, 216 P2d 674 (1950) ("mutual mistake" occurs when parties to a contract share a "reciprocal and common" misunderstanding). There is no evidence that Daryl executed the disclaimer pursuant to any contractual arrangement; rather, Daryl's execution of the disclaimer was a singular act, and his mistake as to the legal effect of that act is unilateral in nature.

Since 1975, when Oregon enacted the Uniform Disclaimer Act,[6] disclaimers have been based on statute. Consequently, we begin by considering the Uniform Disclaimer Act's text and context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). *Palmer v. White*, 100 Or App 36, 784 P2d 449 (1989), is the only reported Oregon case interpreting the Uniform Disclaimer Act. In *Palmer*, we held that a partial, conditional disclaimer was valid under the act. *Id*. at 39-40. That analysis does not assist us here.

ORS 112.652 describes the general entitlement to disclaim:

"A person * * * who is an heir, next of kin, devisee, legatee, person succeeding to a disclaimed interest, beneficiary under a testamentary instrument, or appointee under a power of appointment exercised by a testamentary instrument, may disclaim in whole or in part the right of succession to any property or interest therein, including a future interest, by delivering a written disclaimer under ORS 112.650 to 112.667. A disclaimer may be of a fractional share or of any limited interest or estate. The instrument shall describe the property or interest disclaimed, declare the disclaimer and extent thereof, and be signed by the disclaimant."

ORS 112.655 prescribes the requisites of an effective disclaimer, including that a disclaimer of a present interest must be delivered within nine months of the decedent's death, ORS 112.655(1), and that delivery must be in person or by registered or certified mail to specified persons. ORS 112.655(4).

ORS 112.657 describes the effect of a disclaimer:

"(1)   Unless the decedent or donee of the power has provided for another disposition, the property or interest disclaimed devolves:

"(a)   As to a present interest, as if the disclaimant had predeceased the decedent or, if the disclaimant is designated to take under a power of appointment exercised by a

---

[6] *See* Or Laws 1975, ch 480.

testamentary instrument, as if the disclaimant had predeceased the donee of the power[.]

"* * * * *

"(2)   A disclaimer relates back for all purposes to the date of the death of the decedent, or of the donee of the power, or the determinative event, as the case may be."

Finally, ORS 112.660 provides:

"(1)   The right to disclaim property or an interest therein is barred by:

"(a)   An assignment, conveyance, encumbrance, pledge, or transfer of the property or interest, or a contract therefor;

"(b)   A written waiver of the right to disclaim;

"(c)   An acceptance of the property or interest or benefit thereunder; or

"(d)   A sale of the property or interest under judicial sale made before the disclaimer is effected.

"(2)   The right to disclaim exists notwithstanding any limitation on the interest of the disclaimant in the nature of a spendthrift provision or similar restriction.

"(3)   *The disclaimer or the written waiver of the right to disclaim is binding upon the disclaimant or person waiving and all persons claiming through or under the disclaimant or person waiving.*"[7] (Emphasis added.)

Thus, the text of the Uniform Disclaimer Act does not refer to or provide for revocation or rescission of a disclaimer. To the contrary, the statute, which does address *waiver* of the right to disclaim, states, without elaboration or qualification, that the disclaimer "is binding upon the disclaimant." ORS 112.660(3).

■      We proceed to the Uniform Disclaimer Act's context, which includes "the prior enacted versions of the operative statutes * * * as well as the preexisting common-law and statutory frameworks within which the laws were enacted."

---

[7] The remaining provisions of the Uniform Disclaimer Act, ORS 112.662-.667, are not pertinent to this case.

*City of Salem v. Salisbury*, 168 Or App 14, 25, 5 P3d 1131 (2000).

In enacting the Uniform Act, the legislature repealed a disclaimer statute, *former* ORS 112.675, which had been in place only since 1969. That statute, which was enacted as part of an omnibus revision to the probate code, Oregon Laws 1969, chapter 591, section 77, did not refer to, or provide for, revocation of a disclaimer.[8] There were no prior disclaimer statutes.

Similarly, there was no preexisting common law of disclaimers, much less of revocation of disclaimers. In one case, *Blake v. Blake*, 147 Or 43, 49, 31 P2d 768 (1934), the court assumed, without deciding, that a party could renounce a devise, but concluded that the evidence "preponderate[d] toward an acceptance of the devise" in that case. *Id.* at 50. In its brief discussion, the court referred parenthetically to a treatise discussion of renunciation and disclaimers. *Id.* at 49-50.[9] Nothing in that discussion pertains to the revocation of disclaimers.

In short, the statutory text does not provide for revocation of disclaimers and neither prior Oregon statutes nor

---

[8] *Former* ORS 112.675 provided:

"A person may renounce intestate succession or a devise of property, wholly or partially, by filing a signed declaration of such renunciation with the court and serving a copy on the personal representative within four months after the date of appointment of the personal representative. No interest in the property so renounced is considered to have vested in the heir or devisee and the renunciation is not considered a transfer by gift of the property so renounced, but the property so renounced passes as if the heir or devisee had failed to survive the decedent. Creditors of the renouncing heir or devisee, including judgment creditors, attachment and execution creditors and tax lien claimants, have no interest in the property renounced."

[9] The court in *Blake* quoted the following language:

"An estate vests, under a devise, on the death of the testator, before entry. But a devisee is not bound to accept of a devise to him *nolens volens*; and he may renounce the gift, by which act the estate will descend to the heir, or pass in some other direction under the will. The disclaimer and renunciation must be by some unequivocal act; and it is left undecided whether a verbal disclaimer will be sufficient; and some judges have held that it may be by a verbal renunciation. Perhaps the case will be governed by circumstances." *Blake*, 147 Or at 49-50 (citations and internal quotation marks omitted).

decisional law contemplated such revocation. To the contrary, the statute simply states that a disclaimer shall be "binding" on the disclaimant. ORS 112.660(3).

We note, moreover, that neither the scant legislative history of Oregon's 1975 enactment of the Uniform Disclaimer Act nor the Act's official commentary refers to revocation of disclaimers. Rather, those sources merely express and reiterate the policies underlying the statutory scheme: (1) to ensure that the common-law doctrine of renunciation was equally available to both testamentary legatees and intestate heirs; (2) to establish a specific time period during which a disclaimer must be made; (3) to standardize the requirements for a valid disclaimer; and (4) to codify the doctrine of " 'relation back', which has the effect of preventing a succession from becoming operative in favor of the disclaimant," thus protecting a disclaimed interest from being reached by the disclaimant's creditors. *See, e.g.*, Testimony, Senate Judiciary Committee, SB 137, February 5, 1975, Ex D (statement of attorney James D. Clarke).

The comprehensive statutory scheme thus evinces no legislative intent to provide for revocation of an otherwise-"binding" disclaimer. Daryl suggests, nevertheless, that, because the statutes do not expressly preclude revocation, equitable principles permit probate courts to afford such a remedy in appropriate cases. We disagree for two reasons.

First, the Uniform Disclaimer Act's statutory scheme is comprehensive and invites no qualification or supplementation by reference to "equitable" principles or otherwise. Without such a qualification, equity cannot undo a disclaimer executed pursuant to statute. *See, e.g., Rainey v. Quigley*, 180 Or 554, 566-67, 178 P2d 148 (1947) (equity can afford relief from contractual, but not statutory, forfeiture); *Port of Siuslaw v. Ram Dev.*, 26 Or App 873, 878, 554 P2d 631 (1976) (same).

Second, in a related sense, permitting revocation would subvert the operation of the comprehensive statutory scheme governing disclaimers. As a general rule, title to a decedent's real property "vests" in the decedent's heirs and devisees upon the decedent's death. ORS 114.215(1); *see also Hendrickson v. Warburton*, 276 Or 989, 992, 557 P2d 224

(1976). The Uniform Disclaimer Act permits a narrow exception to that principle, provided that the disclaimer is executed and delivered "not later than nine months after the death of the decedent or the donee of the power." ORS 112.655. The effect of the disclaimer is, thus, to avoid a vesting in the disclaimant and, instead, to vest title in the disclaimant's heirs as of the decedent's death. *See* ORS 112.657(1)(a).[10] Permitting "equitable" revocation of disclaimers, with concomitant "divesting" of interests, would transform the Uniform Disclaimer Act's precise exceptions into a sort of wildcard, contradicting the statutory scheme's clear and certain application. We consequently conclude that the disclaimer cannot be rescinded based on Daryl's unilateral mistake about its legal effect.[11]

Our conclusion in that regard comports with the decisional law of other states with analogous, albeit not identical, disclaimer statutes.[12] *See, e.g., Estate of Holden v. Holden,* 336 SC 456, 520 SE2d 322 (1999); *Webb v. Webb,* 171 W Va 614, 301 SE2d 570 (1983).

---

[10] An analogy to gift law is instructive. Under Oregon law, a gift must be delivered to the recipient "because [delivery] is the way a donor gives up the power to revoke the gift." *Estate of Leda Mae Grove v. Selken,* 109 Or App 668, 675, 820 P2d 895 (1991). Once a beneficial gift is delivered, acceptance on the part of the donee is presumed in the absence of any evidence of contrary intent. *Dillin v. Alexander,* 281 Or 679, 686, 576 P2d 1248 (1978).

Those "delivery" and "acceptance" concepts are, in many ways, analogous to the concept of vesting and disclaimer in the probate context. An interest in property becomes "vested" in an heir upon the death of the decedent in the same way that a gift become irrevocable upon delivery. If a disclaimer is not filed within nine months, the right to disclaim passes, and the law, in effect, assumes that acceptance of the interest has occurred. Thus, when Daryl executed the disclaimer, he effectively refused to accept any interest in decedent's estate, and his interest "vested" in, or was effectively delivered to, his children. In the absence of any disclaimer on the part of Daryl's children, their acceptance of that interest in decedent's estate must be presumed.

[11] Daryl's suggestion that equitable relief is appropriate here under the principles explained in *N.W. Ice & Cold Storage v. Wemme,* 159 Or 415, 421, 80 P2d 881 (1938), is unavailing. In *N.W. Ice & Cold Storage,* the court sought to avoid "injustice and loss to plaintiff" by allowing for the rescission of a contract founded on a good-faith mutual mistake of law. *Id.* at 426. But we can find no Oregon case, and Daryl does not cite to one, that has allowed equitable relief where the mistake of law was unilateral.

[12] Like Oregon, no other jurisdiction that has adopted the Uniform Act has considered whether a disclaimer can be revoked or set aside.

In *Holden*, the decedent died intestate and was survived by his wife. The decedent's sons disclaimed their interest, mistakenly thinking that their interest would go to their mother. On discovery of their mistake, the sons attempted to revoke or withdraw their disclaimers. *Holden*, 520 SE2d at 323-24. The court concluded that the mistake was one of law and that such a mistake, by itself, did not warrant relief: "It is the general rule that a court of equity will not, where a mistake is disclosed, grant relief from the consequences thereof in the absence of fraud or undue influence." *Id*. at 325.

*Webb* was similar. There, the decedent died intestate and was survived by his wife. The decedent's son executed a valid disclaimer believing that his intestate share of his father's estate would pass to his mother. *Webb*, 301 SE2d at 572-73. The effect of the disclaimer, however, was to give the son's intestate share to his daughter. The son filed an action to have the disclaimer declared void and set aside on the grounds of mistake, but the court refused to set aside the disclaimer, holding that the son's unilateral mistake of law could not justify equitable relief. *Id* at 576-77.[13]

■ We consider, finally, Daryl's argument that, even if the trial court correctly refused to set aside the disclaimer, it should have reformed the disclaimer "so as to effectuate the parties' intent." That argument is unavailing for the same reasons that Daryl's revocation argument fails. The comprehensive statutory scheme does not invite equitable qualification by either revocation or reformation. We note, moreover, that the "reformation" Daryl seeks would not merely alter the

---

[13] *In Matter of Estate of Berg v. Zuraff*, 355 NW2d 13 (1984), the South Dakota Supreme Court held that a surviving spouse could, with court approval,

"revoke or rescind a disclaimer of interest within the time limitation provided for [by statute] providing no adverse rights have intervened and no prejudice has been shown to the creditors of the widow or widower or to other persons interested in the estate." *Id*. at 15.

That holding was expressly limited to surviving spouses and was founded on the fact that the revocation occurred "*within the time limitation provided by statute*." *Id*. (emphasis added). Here, Rachel died in January 1995, and Daryl executed the disclaimer in April 1995. Daryl's petition to set aside the disclaimer was filed in February 1999, more that *four years* after Rachel's death. Oregon's disclaimer statute requires that a disclaimer "shall be delivered *not later than nine months after the death of the decedent*." ORS 112.655 (emphasis added). Thus, even under the South Dakota approach, Daryl's attempted revocation of his disclaimer would have been untimely and invalid.

language of the disclaimer instrument but would completely change its character and legal effect, transforming a statutorily prescribed instrument into an assignment of an interest in property. Daryl cites no Oregon precedent—and we are not aware of any—that has cast "reformation" so broadly. *See, e.g., Taylor v. McCollom,* 153 Or App 670, 683-84, 958 P2d 207 (1998) (detailing circumstances under which a court will reform a contract); *Sea Fare v. Astoria,* 6 Or App 605, 610-11, 488 P2d 840 (1971) (same). The trial court correctly refused to reform the disclaimer.

Affirmed.