In re The Unsupervised ESTATE
OF Rebecca A. HIGHFILL,

Kenneth Madley, Jr., Appellant–
Respondent,

v.

Patricia Highfill, Appellee–Petitioner.

No. 13A01–0501–CV–31.

Court of Appeals of Indiana.

Dec. 19, 2005.

Rehearing Denied March 3, 2006.

Vicki L. Carmichael, Jeffersonville, for Appellant.

Stanley V. Pennington, Pennington Law Office, P.C., Milltown, for Appellee.

## OPINION

MAY, Judge.

Kenneth Madley, Jr. ("Madley") appeals the judgment for Patricia Highfill, his former mother-in-law, regarding a disclaimer of proceeds of a life insurance policy on Rebecca Highfill ("Rebecca"), his former wife. He raises three issues, which we consolidate and restate as:

1. Whether the disclaimer of Madley's property interest was valid under the Uniform Disclaimer of Property Interests Act ("UDPIA"); and

2. Whether Madley was fraudulently induced to sign the alleged disclaimer.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In 1995, Madley and Rebecca dissolved their ten-year marriage. During the marriage Rebecca had taken out a life insurance policy on herself through her employer and named Madley as the beneficiary. In January 1998, Rebecca changed her name on the policy from Madley to Highfill. Her mother Patricia Highfill ("Highfill") also signed the name change form in a space marked "beneficiary." (Ex. E.) Rebecca died intestate on February 3, 2004.

After Rebecca's death, Highfill learned Madley was still listed as the beneficiary of the life insurance policy and contacted him. Highfill, her son Rob Highfill, Madley, and Madley's sister Lola Norman met at Norman's house on February 20, 2004. During the meeting, Highfill asked Madley to read and sign a document related to the life insurance policy proceeds. That document ("the disclaimer") provided:

DATE:   FEBRUARY 20, 2004
RE: INWOOD OFFICE FURNITURE GROUP UNIVERSAL LIFE INSURANCE CERTIFICATE # 0088655

I, Kenneth R. Madley, Jr., the former spouse of Rebecca A. Highfill, am aware that, following the dissolution of my marriage from Rebecca, she intended to and believed she had removed me as beneficiary of the referenced life insurance policy. It is further my understanding that Rebecca intended to and believed she had substituted her mother, Pat Highfill, as beneficiary of the referenced life insurance policy. It is my understanding that it was Rebecca's intent to provide her mother with the proceeds from the referenced insurance policy to pay any and all costs of her last illness, funeral and burial expenses.

Despite the fact that Rebecca intended to and believed she had removed me and named her mother as beneficiary, I appear as the named beneficiary. In keeping with Rebecca's intent, wish and desire I disclaim any interest, right and/or title to the proceeds from the above referenced insurance policy.

I agree to and will do whatever is necessary to provide the proceeds of the referenced insurance policy to Rebecca's mother, Pat Highfill.

/s/ Kenneth R Madley, Jr.      Date: 2-20-04
**KENNETH R. MADLEY, JR.**

/s/ Lola M Norman      Date: 2-20-04
**WITNESS**

(Exhibit H) (handwritten items underlined).

On March 2, 2004, Highfill submitted a claim, as beneficiary, to the insurance company. The claim included Rebecca's death certificate, the disclaimer Madley had signed, and the insurance company's standard claim form. The insurance company subsequently contacted Madley regarding

the policy. Madley submitted a claim, as beneficiary, to the insurance company on April 2, 2004. On April 20, 2004, the insurance company paid Madley the $29,000 due under the policy.

On April 29, 2004, Highfill, as personal representative of Rebecca's estate, filed a Petition to Recover Converted Assets. She alleged that although Madley had disclaimed his interest in the life insurance proceeds, the insurance company had paid the proceeds to Madley and Madley had refused to turn the proceeds over to Highfill or the estate. After a hearing, the trial court found for Highfill and ordered Madley to pay $29,000 to the estate.

## DISCUSSION AND DECISION

■ Our Indiana Supreme Court has set out the following standard of review when a trial court enters findings and conclusions on its own motion:

Sua sponte findings control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. When a court has made special findings of fact, an appellate court reviews sufficiency of the evidence using a two-step process. First, it must determine whether the evidence supports the trial court's findings of fact; second, it must determine whether those findings of fact support the trial court's conclusions of law. Findings will only be set aside if they are clearly erroneous. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. In order to determine that a finding or conclusion is

clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made.

Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind.1997) (citations and internal quotations omitted). When, as here, the parties do not challenge the findings of fact, our review is de novo. J Squared, Inc. v. Herndon, 822 N.E.2d 633, 638 (Ind.Ct. App.2005).

The trial court's ruling consists of twelve numbered paragraphs. Although not denominated as such, the first nine paragraphs are findings of fact. Paragraphs ten through twelve state the following conclusions of law:

10. I.C. [§ ] 35–17.5–3 is the controlling statute. The disclaimer herein meets the requirements of I.C. [§ ] 32–17.5–3–3. The disclaimer (Exhibit "H") was in writing, it states it is a disclaimer, it identifies what is being disclaimed and is signed by the person making the disclaimer. Kenneth Madley alleges fraud in the obtaining of the disclaimer, however, the Court finds this to be without merit.

11. The delivery or filing of the disclaimer in the manner provided by I.C. [§ ] 32–17.5–7 has been met. The disclaimer was sent to the insurance company and received by them [sic] no later than March 5, 2004. (See Exhibit "B"). The disclaimer does not take effect until delivered to the person obligated to distribute the interest. Once delivered, it becomes irrevocable. Kenneth Madley had from February 20, 2004 until March 5, 2004 to notify the insurance company that he had changed his mind. The record in the case shows that it was not at least until April 1, 2004, in the phone conversation, that this issue may have been addressed and certainly nothing in

writing was filed until April 13, 2004. (See Exhibit "C".)

12. The Court hereby finds the executed disclaimer to be valid. Furthermore the Court finds that it was delivered as required by law to the insurance company thereby making it irrevocable. The Court finds that Kenneth Madley has assets (the life insurance proceeds of $29,000) of the estate and is hereby ORDERED to return the same within forty-five (45) days from the date of this order.

(App. at 5–6.)

### 1. *Validity of the disclaimer*

Indiana enacted the UDPIA in 2003. The UDPIA "applies to a disclaimer of an interest in or power over property regardless of when the interest or power was created." Ind.Code § 35–17.5–1–1. A disclaimer is "a refusal to accept an interest in or power over property." Ind.Code § 32–17.5–2–4. "A person may disclaim, in whole or part, any interest in or power over property, including the power of appointment." Ind.Code § 32–17.5–3–1. Among the property interests contemplated by the statute are the proceeds from an insurance policy. *See* Ind.Code § 32–17.5–2–1.

Ind.Code § 32–17.5–3–3(b) enumerates the requirements for a valid disclaimer: "A disclaimer must: (1) be in a writing or other record; (2) state that it is a disclaimer; (3) describe the interest or power disclaimed; (4) be signed by the person making the disclaimer; and (5) be delivered or filed in the manner provided in IC 32–17.5–7." The disclaimer becomes irrevocable when it is delivered as set forth in

Ind.Code § 32–17.5–7. Ind.Code § 32–17.5–3–5.

The General Assembly has mandated we consider "the need to promote uniformity of the law with respect to [disclaimers of property interests] among states that enact [the UDPIA]." Ind.Code § 32–17.5–1–4. Although nine other states have enacted the UDPIA, none has yet addressed what level of specificity is required in a disclaimer or who is required to deliver a disclaimer.[1]

■ A disclaimer is somewhat akin to a waiver, which is "the voluntary relinquishment or abandonment ... of a legal right or advantage." Black's Law Dictionary 1574 (7th ed.1999). A valid waiver involves both the "knowledge of the existence of the right and the intention to relinquish it." *Forty–One Associates, LLC v. Bluefield Associates, L.P.*, 809 N.E.2d 422, 428 (Ind.Ct.App.2004). Similarly, before an interest can be disclaimed, the person disclaiming the interest should have some knowledge of the interest and intend to refuse the interest. This is presumably the purpose behind the UDPIA requirement of a writing that states it is a disclaimer, describes what is being disclaimed, and includes the signature of the person making the disclaimer.

■ Madley argues the disclaimer was not valid under the UDPIA because it did not adequately describe the interest to be disclaimed and because it was not properly delivered to the insurance company.

#### a. *Description of disclaimed interest*

■ The trial court found the disclaimer "identifie[d] what [was] being disclaimed."

---

1. Arkansas, Hawaii, Iowa, Maryland, New Mexico, North Dakota, Oregon, Virginia and West Virginia have enacted the current version of the UDPIA. Ten other states have enacted a previous version of the uniform act: Alabama, Alaska, Arizona, Delaware, District of Columbia, Mississippi, New Hampshire, Rhode Island, South Dakota and Vermont. Arkansas and Maryland each enacted the prior version, later repealed it, and then enacted the newer version of the uniform act.

(App. at 5.) The disclaimer refers specifically to "INWOOD OFFICE FURNITURE GROUP UNIVERSAL LIFE INSURANCE CERTIFICATE # 0088655." (Ex. H.)

Madley acknowledges the disclaimer identifies the policy by name and policy number, but argues it is invalid because it does not include the value of the policy. Highfill states neither she nor Madley knew the amount of the policy when he signed the disclaimer. She argues the value of the policy "does not change the fact that [Madley] knew he was disclaiming his interest, right and/or title to the insurance proceeds. That [Madley] did not know the amount of the proceeds does not change the fact that he knew what he was disclaiming." (Br. of Appellee at 10.)

■ The second paragraph of the disclaimer indicates Madley was the named beneficiary of a specific life insurance policy. In the next sentence, he disclaimed "any interest, right and/or title to the proceeds" from the policy. (Exhibit H.) This evidences both Madley's knowledge of his right to take under Rebecca's life insurance policy and his intention to relinquish that right. The description of the property was sufficient for Madley, if he had chosen to do so, to determine the amount of the policy. The trial court did not err in finding the disclaimer adequately identified what Madley was disclaiming.[2]

b. *Delivery of the disclaimer*

■ Chapter 7 of Article 17.5 describes the procedure for delivery of a disclaimer. The chapter does not specify who must deliver the disclaimer but does detail who must receive the disclaimer. Two particular methods of delivery are contemplated under the UDPIA, namely, personal delivery and first class mail. Ind. Code § 32–17.5–7–1(3) permits "any other method likely to result in receipt of the disclaimer." Sections 2 through 11 of Chapter 7 specify the individual to whom the disclaimer must be delivered, depending on the nature of the property interest being disclaimed. As relevant here, section 6 provides: "A disclaimer of an interest created by a beneficiary designation made after the time the designation becomes irrevocable must be delivered to the person obligated to distribute the interest." Ind.Code § 32–17.5–7–6.

The structure of this chapter suggests the emphasis is on ensuring the appropriate person receives the disclaimer, regardless of who delivers the disclaimer. *See* Comment to UDPIA § 12 (2002) ("The rules set forth in Section 12 [upon which our chapter 7 is based] are designed so that anyone who has the duty to distribute the disclaimed interest will be notified of the disclaimer.").

Madley asserts the delivery of the disclaimer was not valid because he did not deliver it to the insurance company. Rather, he delivered it to Highfill, who was not the proper recipient under Ind.Code § 32–17.5–7–6, and Highfill, who was not the disclaimant under Ind.Code § 32–17.5–

---

2. The third paragraph of the disclaimer states: "I agree to and will do whatever is necessary to provide the proceeds of the referenced insurance policy to Rebecca's mother, Pat Highfill." (Exhibit H.) Madley argues this paragraph contemplated future action, *i.e.*, providing the proceeds, and presupposes Madley's "dominion and control" over the proceeds. (Appellant's Br. at 13.) Because a disclaimer, by definition, excludes such dominion and control, Madley argues, the document is not a disclaimer. Madley did not raise this argument to the trial court. We therefore deem it waived. *See Dedelow v. Pucalik*, 801 N.E.2d 178, 183 (Ind.Ct.App. 2003) ("A party generally waives appellate review of an issue or argument unless that party presented that issue or argument before the trial court.")

2–2, delivered it to the proper recipient, i.e., the insurance company. Highfill notes the UDPIA does not "designate the disclaimant as the party responsible to deliver the disclaimer." (Appellee's Br. at 14.)

Madley signed the disclaimer on February 20, 2004. Highfill mailed the disclaimer with other documents to the insurance company and the insurance company received the disclaimer on March 5, 2004.[3] Because the disclaimer was mailed to the insurance company and the insurance company was the "person obligated to distribute the interest," Ind.Code § 32–17.5–7–6, we hold the delivery of the disclaimer was valid. When the insurance company received the disclaimer, it became irrevocable. Ind.Code § 32–17.5–3–5.

### 2. Fraudulent inducement

■■■ Madley argues Highfill fraudulently induced him to sign the disclaimer. The trial court noted, without elaboration, this allegation was "without merit." (App. at 5.) When the trial court does not enter findings on a particular issue, as in this case, we presume the judgment is based on findings supported by the evidence. Skiles v. Skiles, 646 N.E.2d 353, 355 (Ind. Ct.App.1995), trans. denied. We will affirm if the judgment can be sustained on any legal theory supported by the evidence most favorable to the judgment, together with all reasonable inferences to be drawn therefrom. Id. We also consider any uncontradicted evidence. Id. In this review, we neither weigh the evidence nor judge witness credibility. Harrison v. Thomas, 761 N.E.2d 816, 816 (Ind.2002), Reh'g. denied.

■■■ To prove fraud, the claimant must satisfy three elements: (1) a material misrepresentation of past or existing facts; (2) made with knowledge or reckless ignorance of falsity; (3) that caused the claimant to rely on the misrepresentation to the claimant's detriment. Siegel v. Williams, 818 N.E.2d 510, 515 (Ind.Ct.App.2004).

■■■ Madley claims Highfill made two misrepresentations. First, he asserts she misrepresented the amount of the policy at the meeting on February 20. The evidence most favorable to the judgment includes Highfill's testimony regarding the meeting: "[N]othing was said about any amount of insurance because I did not know. The insurance company could not tell me any amount because of the privacy act." (Tr. at 38.) Second, Madley asserts Highfill misrepresented that Rebecca "intended to [and] believed she had removed [Madley] as the beneficiary" of the policy. (Appellant's Br. at 16.) The evidence indicates Rebecca had filled out a change of name/change of beneficiary form in January 1998, which both Rebecca and Highfill signed. Although only the change of name section was completed, Highfill's signature appears in a space marked "beneficiary." (Ex. E) Highfill testified this was the basis of her belief "the beneficiary had been changed." (Tr. at 37.) In addition, the trial court found Rebecca "had changed other insurance policies before her death, but did not change the beneficiary" in this policy. (App. at 4.)

Viewing this evidence in a light most favorable to the judgment, Highfill did not know the amount of the policy, did not mention it, and thus could not have misrepresented it. Sufficient evidence was also presented for the trial court to conclude Rebecca intended to change the beneficiary designation on all her life insurance policies, but inadvertently failed to do

---

**3.** The disclaimer is stamped "RECEIVED Mar 05 2004 GUL Services." (Ex. B.) GUL Services refers to the insurance company.

so with respect to this policy. As a result, we must affirm the trial court's finding Highfill did not commit fraud.

The disclaimer was valid under the UDPIA, and Madley was not fraudulently induced to sign the disclaimer. Accordingly, we affirm.

Affirmed.

KIRSCH, C.J., and ROBB, J., concur.