2009 VT 60

## Agnes Carvalho v. Estate of Donald L. Carvalho

[978 A.2d 455]

No. 08-110

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed June 12, 2009

114

*Martin Nitka*, Ludlow, for Plaintiff-Appellant.

*J. Christopher Callahan* and *Brendan P. Donahue* of *Brady & Callahan, P.C.*, Springfield, for Defendant-Appellee.

¶ 1. **Dooley, J.** This case requires us to decide whether and in what circumstances a person who has disclaimed an interest in property under the Uniform Disclaimer of Property Interests Act, codified at 14 V.S.A. §§ 1951-1959, may revoke that disclaimer. Agnes Carvalho appeals the superior court's summary judgment order precluding her from revoking a disclaimer of her interest in her son's estate. Ms. Carvalho claims that the superior court erred in: (1) ruling that disclaimers are irrevocable absent incompetence, duress, coercion, or undue influence; (2) finding that there were no genuine issues of material fact as to whether she

was incompetent or under duress or coercion when she executed the disclaimer; and (3) concluding that she had failed to properly preserve the issue of whether the disclaimer described the subject property with sufficient specificity to be valid. We hold that while statutory disclaimers are generally revocable only in limited circumstances, the superior court erred by granting summary judgment to Ms. Carvalho's nephew, Robert Winkis (hereinafter nephew), who opposed revocation of the disclaimer. Accordingly, we remand the matter for the court to hold a hearing on whether the circumstances warranted allowing revocation of the disclaimer.

¶ 2. We review decisions granting summary judgment de novo, using the same standard as the trial court; we will uphold such decisions if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Field v. Costa*, 2008 VT 75, ¶ 14, 184 Vt. 230, 958 A.2d 1164. "The moving party has the burden of proof, and the opposing party must be given the benefit of all reasonable doubts and inferences in determining whether a genuine issue of material fact exists." *Price v. Leland*, 149 Vt. 518, 521, 546 A.2d 793, 796 (1988); see also *Fritzeen v. Trudell Consulting Eng'rs, Inc.*, 170 Vt. 632, 633, 751 A.2d 293, 296 (2000) (mem.).

¶ 3. With that standard in mind, we examine the undisputed facts and identify some of the disputed facts. Agnes Carvalho was a ninety-two-year-old widow when her son Donald, who was her only child and had been living with her, unexpectedly died in December 2005. The trial court found that she "was deeply upset and distraught after Donald's death." Donald's will left his estate to Ms. Carvalho unless she predeceased him, in which case the estate would go to nephew. Ms. Carvalho was the only noncontingent beneficiary in Donald's will, and nephew was the only contingent beneficiary in the will. Thus, as the trial court recognized, nephew was "the alternate residuary legatee and the person who would benefit if Ms. Carvalho were to disclaim her interest in Donald's estate."

¶ 4. Besides being a contingent beneficiary, nephew was named executor of Donald's estate, thereby making him a fiduciary to the estate and its beneficiaries. See *In re Estate of Watkins*, 113 Vt. 126, 133, 30 A.2d 305, 310 (1943) ("In our law an executor is a person, or corporation empowered to discharge the duties of a fiduciary, appointed as such by the testator in his

will."). As executor, nephew told Ms. Carvalho that she needed to sign some paperwork for her son's estate. Three weeks after Donald's death, on January 11, 2006, nephew took Ms. Carvalho to the office of the attorney representing him in his capacity as executor of Donald's estate. According to Ms. Carvalho's deposition, she went because "I was told to go to a lawyer so I won't lose my property, so that's why I went." As the superior court found, although Ms. Carvalho had contacted that attorney's office before when Donald became sick, she had not previously met or done business with the attorney. Ms. Carvalho had, however, talked with a paralegal in the attorney's office and requested that the office prepare for her a will, an advanced healthcare directive, and a financial power of attorney. Thus, the attorney understood that Ms. Carvalho would on that day "sign her own will, and do an advanced directive and a financial power of attorney" and other papers related to the estate.

¶ 5. In addition to signing other documents that the attorney had prepared ahead of time, Ms. Carvalho signed the following disclaimer, which, as the trial court found, had not been prepared or reviewed by her in advance of the meeting:

> NOW COMES Agnes Carvalho, mother and interested person of the deceased, Donald L. Carvalho, and pursuant to the Vermont Uniform Disclaimer of Property Interest[s] Act 14 V.S.A. Chapter 83, hereby disclaims all right, title and interest held by me in the Estate and to the following property devolving, passing or otherwise distributing property to Robert Winkis the heir of the decedent, at the death of Donald L. Carvalho, who died on December 21, 2005:
>
> Assets:

The space after the word "Assets" was left blank.

¶ 6. In his deposition, the attorney explained the sequence of events and the reason for the disclaimer. The attorney first met together with nephew and Ms. Carvalho to sign the estate papers. Then nephew left the room to allow the attorney and Ms. Carvalho to discuss the other documents, particularly because nephew was the beneficiary of Ms. Carvalho's will. The attorney recommended the disclaimer as "Medicaid planning," in view of the fact that nephew was Ms. Carvalho's beneficiary. Apparently,

in the event Ms. Carvalho were to enter a nursing home, the disclaimer would allow her to avoid having to sell her house to pay for the nursing home before becoming Medicaid eligible. The disclaimer was then prepared by the attorney and signed by Ms. Carvalho. The attorney saw the preparation of these documents as "paperwork for the estate" and billed the estate for this work. Although nephew was not present when Ms. Carvalho signed the disclaimer, he apparently signed the document later the same day. After nephew and Ms. Carvalho left the attorney's office, nephew had Ms. Carvalho add his name to her bank accounts, but he did not resist her subsequent decision to take his name off of those accounts.

¶ 7. In her deposition, Ms. Carvalho indicated that she had no memory of signing the disclaimer or that she signed a will that day. She testified that the disclaimer "is supposed to be after I'm gone." She also testified that she did not understand the disclaimer when she signed it.

¶ 8. On April 3, 2006, before any of Donald's assets had been distributed and within the statutory nine-month time period for executing disclaimers of inherited property following the testator's death, see 14 V.S.A. § 1952(a), Ms. Carvalho executed a document purporting to revoke the disclaimer and reassert her interest in Donald's estate. As executor of Donald's estate, nephew did not initially directly oppose Ms. Carvalho's attempt to revoke the disclaimer, but filed a motion to appoint a guardian ad litem for Ms. Carvalho to help with matters concerning the estate, "including specifically, the attempt by Agnes Carvalho to revoke the disclaimer." In support of the motion, nephew argued that although Ms. Carvalho was not incompetent, she had been "strongly influenced by neighbors . . . and due to her advanced age, may not be making decisions that are in her long term best interest." In September 2006, when nephew was no longer executor, he formally objected to the disclaimer in the probate court.

¶ 9. Ms. Carvalho asserted in the probate court that "suspicious circumstances" concerning the execution of the disclaimer — including nephew's involvement in facilitating his ninety-two-year-old aunt's signing of a document that would give him $380,000 — supported revocation. She acknowledged that the person claiming undue influence ordinarily has the burden to prove it, but argued that the burden should shift to the other party when there are suspicious circumstances, such as when an estate fiduciary puts

himself in a position to benefit financially from a disclaimant's action. In a two-page order, the probate court denied Ms. Carvalho's request to allow the revocation, stating briefly that there was little evidence regarding duress or coercion, other than Ms. Carvalho's statement that she was distraught over the death of her son.

¶ 10. Ms. Carvalho appealed to the superior court, listing as questions for review (1) whether the probate court erred by ruling that disclaimers are irrevocable absent a showing of incompetence, undue duress, or coercion, and (2) whether the circumstances surrounding the execution of the disclaimer in this case supported revocation of the disclaimer. In her motion for summary judgment filed with the superior court, Ms. Carvalho argued that the circumstances, including her advanced age, the recent unexpected death of her son, the lack of an opportunity to review the disclaimer or consult with an attorney, and her failure to fully understand the repercussions of the document — coupled with her sworn affidavit — warranted allowing her to revoke the disclaimer. Among other things, Ms. Carvalho stated in her affidavit that her nephew, who stood to benefit from her signing the disclaimer, took her to his attorney's office, telling her that she needed to sign some documents. According to her affidavit, she did not understand that the document she was signing would transfer assets she would inherit from the estate to her nephew during her lifetime.

¶ 11. Relevant to this point, the deposition testimony Ms. Carvalho gave in response to questions from nephew's attorney was as follows:

Q: Did anybody force you or coerce you to sign your name there on [the disclaimer]?

A: No.

Q: You did it willingly; is that right?

A: I must have.

. . . .

Q: But no one forced you [to] do it, you signed that willingly?

A: I don't know. It's my signature.

. . . .

Q: Were you under any undue influence when you signed [] the disclaimer . . . ?

A: No influence. No, I guess it's my own knowledge of nothing; you know, I didn't understand it.

Q: But you signed it anyway?

A: No.

¶ 12. The superior court apparently relied upon this testimony in concluding that Ms. Carvalho was not coerced or unduly influenced, and that nephew was entitled to judgment as a matter of law, even assuming Ms. Carvalho was mistaken as to the legal effect of her disclaimer. Indeed, the court granted summary judgment to nephew even after finding that "there are facts in dispute about how much Ms. Carvalho understood," and that "she does not appear to have understood that the effect" of the disclaimer was to deprive her of the assets of her son's estate during her lifetime.

¶ 13. Before considering whether summary judgment is appropriate under these circumstances, we address Ms. Carvalho's arguments that (1) the disclaimer was invalid because it did not sufficiently describe the property to be disclaimed, and (2) revocation of a disclaimer should generally be allowed when the revocation is made within the statutory time period for making disclaimers and no party has been prejudiced through previous distribution of the property being disclaimed.

¶ 14. Regarding the first issue, we need not decide whether the superior court should have ruled on the sufficiency of the description of the property to be disclaimed. The superior court refused to rule on the issue because Ms. Carvalho failed to list it among the questions submitted to the superior court for consideration following the probate court's decision. Irrespective of whether the issue was properly raised before the superior court, we conclude that the subject disclaimer was plainly valid with regard to the specificity of the named property interest. Ms. Carvalho disclaimed "all right, title and interest" in Donald's estate in the body of the disclaimer. This was sufficient for purposes of 14 V.S.A. § 1953(1), which does not require a list of particular assets to be disclaimed, but rather provides only that the disclaimer shall "describe the property or interest disclaimed."

The fact that the disclaimer was drafted with a space where specific assets could be listed is of no consequence.

¶ 15. Regarding the issue of revocation, the Legislature has established a statutory right to disclaim interests in property. 14 V.S.A. § 1951. Persons wishing to disclaim interests in property devolving to them by will or intestate succession may do so in writing within nine months of the owner's death. *Id.* § 1952(a). Significantly, the disclaimer "is binding upon the disclaimant," *id.* § 1954(c), and the disclaimed property passes "as if the disclaimant had predeceased the decedent," *id.* § 1954(a).

■ ¶ 16. The statute governing disclaimers of property interests in Vermont is a codification of the Uniform Disclaimer of Property Interests Act (UDPIA). Some form of the UDPIA has been enacted in at least nineteen states. *In re Estate of Highfill*, 839 N.E.2d 218, 222 n.1 (Ind. Ct. App. 2005). In adopting the UDPIA, the Legislature specifically commanded that it "be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it." 14 V.S.A. § 1958. We have yet to interpret these statutes as to the question of whether, and, if so, when, disclaimers may be revoked. Accordingly, we look at the outset to how other states that have adopted the UDPIA handle the revocation of disclaimers. See *Dicks v. Jensen*, 172 Vt. 43, 46, 768 A.2d 1279, 1282 (2001) (stating that when statute is intended to "make uniform the law . . . among states enacting it" we will "draw from the decisions of our sister states" (quotation omitted)).

¶ 17. Few courts have considered whether or when disclaimers are revocable under the UDPIA. In *Fleenor v. Williamson*, 17 P.3d 520, 525 (Or. Ct. App. 2000), an intermediate appellate court in Oregon held that under the UDPIA a disclaimant could not revoke a disclaimer based on a unilateral mistake of law. In *Highfill*, an intermediate appellate court in Indiana held that appellant's disclaimer of insurance proceeds under Indiana's UDPIA was valid and irrevocable, and went on to consider a claim that the disclaimer was invalid as fraudulently induced. 839 N.E.2d at 224. The *Highfill* decision is of less assistance to us than *Fleenor*, however, because the Indiana statute expressly provides that disclaimers are irrevocable, *id.* at 224 (citing Ind. Code § 32-17.5-3-5), and because there is no claim of fraud presented in the case before us.

¶ 18. Courts evaluating the question under statutory schemes similar, albeit not identical, to the UDPIA are in accord with *Fleenor* and *Highfill*, at least insofar as they indicate that something more than a mistake of law is necessary to support the revocation of a statutory disclaimer. In *Estate of Holden v. Holden*, a South Carolina appellate court held that a mistake of law will not justify the revocation of a disclaimer. 520 S.E.2d 322, 325 (S.C. Ct. App. 1999). Likewise, in *Webb v. Webb*, the Supreme Court of West Virginia held that a negligent mistake of law on the part of the disclaimant and a negligent mistake of fact on the part of his attorney do not separately or together support the revocation of a disclaimer. 301 S.E.2d 570, 576-77 (W. Va. 1983).

¶ 19. Ms. Carvalho correctly points out that New York's Surrogate Courts, which are analogous to our probate courts, have allowed beneficiaries to retract their renunciation of testamentary gifts absent prejudice to other beneficiaries. However, these decisions, which long pre-date the UDPIA, concern common-law renunciation of property rights as opposed to statutory disclaimers. See, e.g., *In re Angel's Will*, 225 N.Y.S.2d 419, 421 (Sur. Ct. 1962); *In re Johnston's Will*, 298 N.Y.S. 957, 961 (Sur. Ct. 1937). Moreover, with regard to statutory disclaimers, lack of prejudice alone has been held to be insufficient to support revocation. See *In re Estate of Ciaffoni*, 2001 PA Super. 314, ¶¶ 7-9, 787 A.2d 971 (holding that statutory disclaimers are irrevocable even when other beneficiaries would not be prejudiced by the revocation).

¶ 20. Ms. Carvalho argues that *In re Estate of Berg*, 355 N.W.2d 13 (S.D. 1984), supports the position that revocation is allowable in situations where the revocation occurs within the statutory period for filing the disclaimer and where no prejudice to others would result. Indeed, in *Berg*, the Supreme Court of South Dakota so held. *Id.* at 15. We are not persuaded by *Berg* for two reasons, however. First, although the statute at issue in *Berg* expressly provided that disclaimers were "irrevocabl[e]," the court reasoned that the statutory "silence" on the issue did not preclude revocation. *Id.* at 14-15. Second, the *Berg* court based its decision on a cursory survey of case law dealing with the statutory right of a surviving spouse to choose whether to take under the will or under the statute. We are not persuaded that the *Berg* court gave adequate weight to the statutory language or conducted a review of relevant precedent, and thus we decline to follow it.

■ ¶ 21. Considerations of uniformity aside, however, we further conclude that the plain meaning of the statutory language precludes revocation. When interpreting statutes, we generally look first and foremost to the statute's plain meaning. *Smith v. Desautels*, 2008 VT 17, ¶ 18, 183 Vt. 255, 953 A.2d 620. In this case, the statute proscribing the effect of disclaimers states that a disclaimer "is binding upon the disclaimant . . . and all persons claiming through or under him or her." 14 V.S.A. § 1954(c). Moreover, the Legislature provided no method for revoking disclaimers, which is indicative of a legislative intent to preclude revocation. See *Ciaffoni*, 2001 PA Super. 314, ¶ 9 (reasoning that statutory language providing that "the disclaimer shall be binding on the disclaimant" precludes disclaimant from revoking disclaimer); *Fleenor*, 17 P.3d at 524 (citing UDPIA's silence on revocation and its provision that disclaimers are "binding" on the disclaimant in support of its holding that disclaimers are irrevocable).

■ ■ ¶ 22. Furthermore, the statute instructs that a disclaimant should be treated as if he or she had predeceased the decedent. 14 V.S.A. § 1954(a) (providing that "the property or interest devolved to a disclaimant under testamentary instrument or under the laws of intestacy . . . devolves as if the disclaimant had predeceased the decedent"). This statutory language precludes the revival of the disclaimant's interest by revocation because the property interests of a deceased person are extinguished. As the court in *Ciaffoni* stated:

> where the disclaimant has absolved himself of any interest that was properly his by will or intestate succession, the disclaimant is deemed to have predeceased the decedent. Like the pre-deceased who, by operation of death, is precluded from asserting a claim against a decedent's estate, the disclaimant may not rise some time later to assert his rights as beneficiary.

2001 PA Super 314, ¶ 10 (citation omitted).

¶ 23. The irrevocability of disclaimers promotes stability in property interests. A disclaimer would not be final, and property interests would be correspondingly unsettled, so long as a disclaimant could revoke. The *Fleenor* court expressed a similar concern: "Permitting 'equitable' revocation of disclaimers, with concomitant 'divesting' of interests, would transform the

[UDPIA's] precise exceptions into a sort of wildcard, contradicting the statutory scheme's clear and certain application." 17 P.3d at 525.

■ ¶ 24. In summary, disclaimers under our statutory scheme are irrevocable based on claims, such as a unilateral mistake of law, that fall short of equitable claims that would support rescission of a contract or cancellation of an instrument. On the weight of the case law, by virtue of our statutory text, and out of concern for the stability of property rights, we hold that disclaimers are not revocable based on disclaimant's mistake of law or simply because the revocation is filed within the statutory time period for filing disclaimers, even if there is no prejudice.

■ ¶ 25. Having determined that the instant disclaimer was valid, and that disclaimers generally may not be revoked even within the statutory time frame for making disclaimers and in the absence of prejudice, we now return to the question of whether revocation is available in any circumstances, and, if so, whether the superior court erred in granting summary judgment in this case. A disclaimer of property interests, and any subsequent revocation of that disclaimer, is similar to the execution or alteration of a will, in the sense that it typically directs the distribution of assets upon the death of a testator. Nephew has not argued, and no court of which we are aware has held, that a disclaimer may never be revoked, even in situations involving incompetence, fraud, undue influence, or other accepted bases for cancellation of instruments. Indeed, although there is little case law describing the circumstances under which a disclaimer of interests by intestate succession may be set aside, "authority from other jurisdictions indicates that such cases are governed by the equitable principles relating to rescission or reformation of contracts and cancellation of instruments generally." *Webb*, 301 S.E.2d at 574; cf. *Holden*, 520 S.E.2d at 325 (relying on general rules of equity in determining that mistake of law, "in the absence of fraud or undue influence," would not permit revocation of disclaimer). Accordingly, if the fact finder on remand in this case were to find undue influence, coercion, or incompetence, revocation of the disclaimer would be warranted, particularly given that it was executed within the statutory time frame for disclaimers and before any property interests were affected.

¶ 26. In the analogous context discussed above, the person challenging the will normally has the burden of demonstrating the existence of undue influence. *In re Estate of Raedel*, 152 Vt. 478, 481, 568 A.2d 331, 333 (1989). The burden of proof shifts to the proponent of the will, however, "when the circumstances connected with the execution of the will are such as the law regards with suspicion." *Id.* (quotation omitted); *In re Guardianship of Knepper*, 856 N.E.2d 150, 154 (Ind. Ct. App. 2006) (recognizing that "when a fiduciary relationship exists and the fiduciary benefits from a questioned transaction, a presumption of undue influence arises and the burden shifts to the fiduciary to rebut the presumption"). Thus, where suspicious circumstances are present, "the will is presumed to be the product of undue influence, and it will not be enforced unless the proponent persuades the trier of fact that no undue influence attended the execution of the will." *Raedel*, 152 Vt. at 481-82, 568 A.2d at 333. We see no reason not to apply the same principle in cases involving the execution or revocation of disclaimers of property interests, particularly in the context of the disclaimer of an inheritance.

¶ 27. The trial court determines whether suspicious circumstances exist "only to establish the burden of proof on the ultimate issue of undue influence." *Id.* at 483, 568 A.2d at 333 (quotation omitted). "Suspicious circumstances are typically present where a testator's fiduciary benefits in the will." *Id.* at 483, 568 A.2d at 334. In *Raedel*, we noted that the presumption of undue influence "does not apply where the beneficiaries are children or grandchildren," and we further expressed a reluctance "to presume undue influence when the relationship between testator and beneficiaries is one between aunt and nieces and nephews, *at least where the beneficiaries do not assist in preparing the will.*" *Id.* at 484, 568 A.2d at 334 (emphasis added). Thus, we found no suspicious circumstances as a matter of law in that case where the nieces and nephews who were to benefit from the will had not assisted in preparing the will and were not in a preexisting fiduciary relationship, such as a guardian, with the testator, their aunt. *Id.*

¶ 28. In our analogous situation involving a disclaimer, the disclaimant is the equivalent of the testator. In this case, nephew was the contingent beneficiary and the executor, and thus a fiduciary of Donald's estate — the estate that is the subject of his aunt's disclaimer. Further, the facts suggest that nephew facili-

tated Ms. Carvalho's disclaimer of her noncontingent interest in the estate by bringing her to the office of the estate's attorney to sign the disclaimer, which she had not seen before. The attorney testified at his deposition that he considered Ms. Carvalho to be his client, but he billed the estate for his services in having her execute the disclaimer. Thus, not only was the execution of the disclaimer facilitated by the contingent beneficiary of the estate, but the attorney who presented the disclaimer to Ms. Carvalho appeared to be representing the interests of parties with potentially conflicting interests. These facts amount to suspicious circumstances as a matter of law, which places the burden on nephew to establish affirmatively that the disclaimer was not procured by undue influence or coercion. Cf. *Haynes v. First Nat'l State Bank of N.J.*, 432 A.2d 890, 901-02 (N.J. 1981) (holding that because attorney who prepared will represented both testator and principal beneficiary and because there was no proof that attorney disclosed conflict of interest to testator, will's proponent had burden of overcoming presumption of undue influence).

¶ 29. Generally, "[u]ndue influence vitiates a devise or gift because of the concern that the testator or donor had done something contrary to his 'true' desires." *Landmark Trust (USA), Inc. v. Goodhue*, 172 Vt. 515, 525, 782 A.2d 1219, 1228 (2001) (quotation omitted). "Any species of coercion, whether physical, mental, or moral, which subverts the sound judgment and genuine desire of the individual, is enough to constitute undue influence." *Id.* at 524, 782 A.2d at 1228 (quotation omitted). The existence of any conflict of interest in the attorney presenting a document for execution is a factor in determining whether undue influence or coercion existed. Cf. *Tutun v. Myers*, 2003 WL 76800 (Mass. App. Ct. Jan. 9, 2003) (stating that thrust of conflict-of-interest claim would be to support claim of undue influence).

¶ 30. Moreover, although a unilateral mistake of law may not normally be the basis for allowing revocation of a disclaimer, the disclaimant's misunderstanding of the legal effect of a disclaimer in the context of suspicious circumstances may be a critical factor for the fact finder to consider in determining whether there was duress, coercion, undue influence or some other equitable basis for allowing revocation. In other words, the disclaimant's misunderstanding of the legal effect of the disclaimer, when suspicious circumstances are present, may inform

the fact finder's determination as to whether the disclaimant's sound judgment or true desire was overcome through coercive tactics.

¶ 31. As noted above, in determining whether the moving party has demonstrated the absence of any genuine issues of material fact that would preclude summary judgment, the court must give the opposing party "the benefit of all reasonable doubts and inferences." *Price*, 149 Vt. at 521, 546 A.2d at 796. Viewing the facts from the opposing party's perspective, this case concerns an estate fiduciary advocating, either himself or through his attorney, for the estate's ninety-two-year-old beneficiary to sign a disclaimer, three weeks after the unexpected death of her son, that would effectively transfer the assets of the estate from the beneficiary to himself as the estate's contingent beneficiary. Further, as the superior court found, the noncontingent beneficiary signed the disclaimer, which had not been prepared beforehand, without understanding its consequences and without being given an earlier opportunity to review it herself or with another attorney.

¶ 32. We emphasize that we are not suggesting that the superior court must allow revocation on remand; rather, we conclude only that the facts of this case preclude summary judgment in favor of nephew. As noted, the facts establish "suspicious circumstances" that impose upon nephew the burden of showing the absence of undue influence or coercion with respect to Ms. Carvalho's signing of the disclaimer. On remand, the fact finder must determine, following an evidentiary hearing, whether nephew has met his burden of demonstrating a lack of undue influence, duress, or coercion with respect to Ms. Carvalho's signing of the disclaimer. Nephew may rebut the presumption of undue influence by establishing "that the transaction was fair and equitable," and that he, both directly and through his attorney, "acted in good faith [and] did not take advantage of [his] position of trust." *Knepper*, 856 N.E.2d at 154; cf. *In re Marriage of Pagano*, 607 N.E.2d 1242, 1247-48 (Ill. 1992) (noting nonexclusive factors, all bearing on fairness of transaction, in determining whether presumption of undue influence has been rebutted). In assessing whether nephew has met this burden, the court should consider the effect of the attorney obtaining the disclaimer from Ms. Carvalho, his client, while acting as attorney for the estate and its executor. If the fact finder determines that nephew has failed to meet his affirmative

burden, the court shall allow Ms. Carvalho to revoke the disclaimer. If, on the other hand, the fact finder determines that nephew has met his burden of demonstrating a lack of undue influence or coercion, the court shall disallow the revocation. In any event, the issue cannot be decided on summary judgment.

*Reversed and remanded.*