**In the Matter of the GUARDIANSHIP OF Helen P. KNEPPER, an Adult.**

**No. 82A04–0602–CV–57.**

Court of Appeals of Indiana.

Nov. 8, 2006.

Verdelski V. Miller, Newburgh, IN, Attorney for Appellants.

Jeff Shoulders, Barber & Shoulders, LLP, Evansville, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellants-plaintiffs—the sixteen grandchildren of Helen P. Knepper, deceased—appeal the trial court's judgment in favor of appellee-defendant Rachel Hester, Knepper's sister and guardian. We have consolidated and rephrased the issues presented by the grandchildren as follows: (1) whether the trial court erroneously determined that Hester overcame a presumption of fraud and undue influence; (2) whether the change of beneficiary on Knepper's American Express account was invalid because a conflict of interest existed and the beneficiary change had not been approved by the court; and (3) whether the Dead Man's Statute[1] should have barred the testimony of two witnesses. Finding no error, we affirm the judgment of the trial court.

## FACTS

Knepper began living alone at her Evansville residence at age seventy-five following the death of her husband in 1997. At some point, various members of Knepper's family became concerned about her wellbeing, including her ability to care for herself and her short-term memory problems. As a result, Knepper was eventually moved to a nursing home.

In the fall of 1998, Knepper and Hester met with attorney Scott Stratman, who had prepared Knepper's will in June of that year. Several months after that meeting, Stratman prepared a petition for the appointment of Hester as Knepper's guardian. In connection with the petition, Stratman obtained a report from Dr. Thomas B. Anderson dated November 12, 1998. Although Dr. Anderson noted in his report that Knepper suffered from short-term memory loss, he opined that Knepper exercised "reasonable judgment" in making personal and financial decisions. Appellants' App. p. 7. Stratman "definitely" agreed with that assessment and believed that Knepper was not acting under any undue influence from Hester regarding the guardianship. Tr. p. 83. The guardianship petition alleged that Knepper's net worth was approximately $500,000.

Hester was appointed as Knepper's guardian on January 12, 1999. At that time, Knepper was seventy-seven years old, and Hester was sixty-six years of age. At that time, Knepper was still handling her own financial affairs. Sometime later in 1999, Knepper received notice from American Express that she should schedule an appointment for an annual review of her accounts. In response, Knepper and Hester met with Mike Wagoner, a financial advisor with American Express in August 1999. At that meeting, Knepper informed Wagoner that she wanted to add Hester as a death beneficiary on her accounts because of the love and care that Hester was providing to her. As a result, Knepper changed the beneficiary designation on those accounts, with Hester designated as a 50% beneficiary and her sixteen grandchildren, collectively, as 50% beneficiaries. The evidence showed that Hester and Knepper had not discussed the beneficiary change prior to the meeting with Wagoner.

Following Knepper's death on January 12, 2005, American Express paid Hester $140,000 as a 50% beneficiary of Knepper's accounts. Thereafter, on August 12, 2005, the grandchildren filed a two-count "Complaint to Restore Assets" against Hester.

---

1. Ind.Code § 34-45-2-4.

Appellee's App. p. 1–8. Count I of the complaint alleged that Hester fraudulently named herself as a beneficiary to the American Express accounts that had originally named the grandchildren as the sole beneficiaries. Count II alleged that Hester committed conversion in exerting unauthorized control over Knepper's funds in a separate Teachers Credit Union account.

At trial, which commenced on November 2, 2005, Wagoner testified that Knepper was fully aware of her actions and the consequences of changing the beneficiaries of her American Express accounts. Wagoner was also of the opinion that Hester did not influence Knepper's decision to designate her as a 50% beneficiary. It was also established at trial that Hester maintained meticulous and accurate accounting records in the guardianship estate. Additionally, Hester did not charge a fee as Knepper's guardian.

In the end, the trial court determined that Hester rebutted the presumption of undue influence concerning Knepper's change of beneficiaries on the American Express accounts and entered judgment in her favor. The trial court entered findings of fact and conclusions of law that provided in relevant part as follows:

3. At all times relevant hereto, [Hester] acted in [Knepper's] best interest. The grandchildren presented no evidence that [Hester] ever exerted undue influence over [Knepper].

4. The relief requested by the grandchildren in Count I of their Complaint to Restore Assets is denied.

5. The grandchildren presented no evidence to support the allegations of 'conversion' in Count II of the grandchildren's Complaint to Restore Assets.

6. The relief requested by the grandchildren in Count II of their Complaint to Restore Assets is denied.

Appellants' App. p. 12–13. The grandchildren now appeal the trial court's entry of judgment only as to Count I of the complaint.

## DISCUSSION AND DECISION

### I. Standard of Review

We initially observe that when the trial court has entered findings of fact and conclusions of law, we apply the following two-tiered standard of review: (1) whether the evidence supports the findings and (2) whether the findings support the judgment. *Clark v. Crowe*, 778 N.E.2d 835, 839 (Ind.Ct.App.2002). The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* at 839–40. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* at 840. We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.* We review conclusions of law de novo. *Bass v. Bass*, 779 N.E.2d 582, 588 (Ind.Ct.App. 2002).

### II. Fraud—Undue Influence

The grandchildren claim that the trial court erred in entering judgment for Hester because the evidence established that Hester committed fraud. In essence, the grandchildren claim that Hester committed fraud by exerting undue influence over Knepper and "allowing [Knepper] to change beneficiaries that would substantially benefit [Hester]." Appellants' Br. p. 4.

This court has recognized that when a fiduciary relationship exists and the fiduciary benefits from a questioned transaction, a presumption of undue influence arises and the burden shifts to the fiduciary to rebut the presumption. *In re Estate of Wade*, 768 N.E.2d 957, 961–63 (Ind.Ct.App.2002). Undue influence is defined as the exercise of sufficient control over the person "to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised." *Id.* at 962. The fiduciary may rebut this presumption by establishing through clear and convincing evidence that she acted in good faith, did not take advantage of her position of trust, and that the transaction was fair and equitable. *Villanella v. Godbey*, 632 N.E.2d 786, 790 (Ind. Ct.App.1994). On appeal, the issue is whether the fiduciary presented sufficient evidence from which the trial court could reasonably conclude that the presumption of undue influence was rebutted. *Id.* at 791.

In this case, the evidence showed that Knepper executed her will in June 1998 and made cash gifts to her grandchildren shortly thereafter. Knepper made the decision later that year to contact her legal counsel about a guardianship, and Stratman testified that Hester did not pressure her to do so. Tr. p. 85–86. Dr. Anderson noted that in November 1998, Knepper exercised "reasonable judgment" in making personal and financial decisions. Appellants' App. p. 7. Stratman confirmed Dr. Anderson's opinion in connection with the guardianship. *Id.* at 43.

Additionally, Wagoner testified that Knepper appreciated the full consequences of her actions in August 1999 when she changed the beneficiary designation on the American Express accounts. *Id.* at 54. The evidence further showed that Knepper desired to change her beneficiary designation as a result of the love and care that Hester had provided to her and that Knepper wanted to "show her appreciation" for Hester's care. Tr. p. 791. Hester and Knepper did not discuss a beneficiary change before the meeting with Wagoner, and Wagoner confirmed that Hester never influenced Knepper regarding her decision to change beneficiaries. Tr. p. 123.

Under the circumstances, it is apparent that Hester acted in good faith and did not take advantage of her position of trust. In other words, there is simply no evidence suggesting that Hester exercised control over Knepper so as to destroy Knepper's free agency or that Hester constrained Knepper to do what she would not otherwise have done. Hence, the evidence supported the trial court's determination that Hester successfully overcame any presumption of undue influence concerning the change of beneficiaries on the American Express accounts.

### III. Conflict of Interest

In a related issue, the grandchildren argue that Knepper's change of beneficiary on the American Express accounts must be set aside because that "transaction" had not been approved by the trial court. The grandchildren maintain that the provisions of Indiana Code section 29–3–8–5 require the "transaction" to be set aside because the beneficiary change had not been approved by the court. Appellants' Br. p. 9.

Indiana Code section 29–3–8–5 provides that

 (a) Any:

 1) sale or encumbrance of any part of the property of a protected person to a Guardian or a Guardian's spouse, agent, attorney, or any corporation, trust or other organization in which the Guardian has a substantial beneficial interest,

or

2) other transaction involving the property that is affected by a substantial conflict between the interest of the protected person and the Guardian's personal interest is void unless approved by the Court.

(b) every contract, sale, or conveyance executed by a protected person is void unless the protected person is a minor in which event the contract sale or conveyance is voidable.

At the outset, we note that the theory on which the case was tried must be adhered to on appeal. *Rueth Dev. Co. v. Muenich,* 816 N.E.2d 880, 883 (Ind.Ct.App.2004). An issue not properly raised before the trial court is waived. *Mitchell v. Stevenson,* 677 N.E.2d 551, 561 (Ind.Ct.App. 1997).

Here, the grandchildren never raised the applicability of Indiana Code section 29–3–8–5 before the trial court until they filed a motion to correct error. As noted above, Count I of the grandchildren's complaint, entitled "fraud," alleged that Hester exerted "undue influence" over Knepper in her capacity as a guardian. Appellants' App. p. 1-2. Count II of the complaint— captioned "conversion"—alleged that Hester "exerted unauthorized control" over Knepper's funds at the Evansville Teacher's Credit Union. *Id.* at 3–4. The case was tried upon these theories alone. At no time did the grandchildren assert the applicability of Indiana Code section 29–3–8–5 until the motion to correct error was filed. Hence, the issue is waived.

### IV. Dead Man's Statute

■ The grandchildren next claim that the judgment must be set aside because Wagoner and Hester should not have been permitted to testify. Specifically, the grandchildren argue that those witnesses were precluded from testifying in accordance with the Dead Man's statute, Indiana Code section 34–45–2–4.

The Dead Man's Statute provides that:

(a) This section applies to suits or proceedings:

(1) in which an executor or administrator is a party;

(2) involving matters that occurred during the lifetime of the decedent; and

(3) where a judgment or allowance may be made or rendered for or against the estate represented by the executor or administrator.

(b) This section does not apply in a proceeding to contest the validity of a will or a proceeding to contest the validity of a trust.

(c) This section does not apply to a custodian or other qualified witness to the extent the witness seeks to introduce evidence that is otherwise admissible under Indiana Rule of Evidence 803(6).

(d) Except as provided in subsection (e), a person:

(1) who is a necessary party to the issue or record; and

(2) whose interest is adverse to the estate;

is not a competent witness as to matters against the estate.

(e) In cases where:

(1) a deposition of the decedent was taken; or

(2) the decedent has previously testified as to the matter;

and the decedent's testimony or deposition can be used as evidence for the executor or administrator, the adverse party is a competent witness as to any matters embraced in the deposition or testimony.

■ In examining this statute, we note that section 34–45–2–4(a)(1) applies

"to suits or proceedings in which an *executor or administrator is a party.*" (Emphasis added). Here, Knepper's American Express accounts were non-probate assets. Tr. p. 100. No estate was ever opened for Knepper and Hester was never an executor or administrator of such an estate. Therefore, the Dead Man's Statute—on its face—does not apply here. Moreover, while the grandchildren contend that Hester was an incompetent witness under the statute, it was the grandchildren who called Hester to testify in their case-in-chief about matters that occurred during Knepper's lifetime. Tr. p. 13, 20–21, 32. In other words, the grandchildren elicited the testimony from Hester that they now claim should have been precluded under the statute. Such a circumstance amounts to invited error. This court has determined that a party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct. *Stolberg v. Stolberg*, 538 N.E.2d 1, 5 (Ind.Ct.App. 1989). Further, the "objection" cited by the grandchildren during Hester's cross-examination was premised on "relevancy" grounds and had nothing to do with the Dead Man's Statute. Tr. p. 53. For these reasons, the grandchildren have waived any objection based upon the Dead Man's Statute. *Estate of Hann v. Hann*, 614 N.E.2d 973, 977 (Ind.Ct.App.1993).

 With respect to Wagoner's testimony, we note that the Dead Man's Statute only applies to a person "whose interest is adverse to the estate." I.C. § 34–45–2–4(d)(2). An adverse interest that would render a witness incompetent under the statute "is one by which the witness will gain or lose by the direct, legal operation of the judgment." *Morfin v. Estate of Martinez*, 831 N.E.2d 791, 798 (Ind.Ct. App.2005).

Hence, in addition to reasons set forth above, the evidence shows that Wagoner—as Knepper's financial advisor—was not entitled to any of the funds in the American Express accounts. To be sure, Wagoner stood to gain or lose nothing by the direct, legal operation of the trial court's judgment. He had no stake in this litigation and his interest was not adverse to any estate as a matter of law. *Id.* at 798–99. Additionally, as with Hester's testimony, the grandchildren never objected to Wagoner's testimony at trial based upon the Dead Man's Statute. The grandchildren's only objections were based upon hearsay and Wagoner's qualification to render an opinion. Hence, any objection to Wagoner's testimony under the Dead Man's Statute was waived. *Estate of Hann*, 614 N.E.2d at 977. As a result, the trial court did not err in admitting Hester and Wagoner's testimony at trial.

The judgment of the trial court is affirmed.

VAIDIK, J., and CRONE, J., concur.