2009 VT 60



Carvalho
v. Estate of Carvahlo (2008-110)

 

2009 VT 60

 

[Filed 12-Jun-2009]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to notify
the Reporter of Decisions, Vermont Supreme Court, 109 State Street, Montpelier, Vermont05609-0801 of any errors in order
that corrections may be made before this opinion goes to press.

 

 


 2009 VT 60
 
  


 No. 2008-110
 
  


 Agnes Carvalho
 
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
      v.
 
 
 Windsor Superior Court
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Estate of Donald L. Carvalho
 
 
 August Term, 2008
 
 
  
 
 
  
 
 
  
 Walter M. Morris, Jr., J.
  
 
 
  
 
 
 Martin
 Nitka, Ludlow,
 for Plaintiff-Appellant.
 
 
  
 
 J. Christopher Callahan and Brendan P. Donahue of Brady & Callahan, P.C., Springfield, for

  Defendant-Appellee.

 

 

PRESENT:  Reiber, C.J.,
Dooley, Johnson, Skoglund and Burgess, JJ.

 

 

¶ 1.            
DOOLEY, J.   This case requires us to decide whether
and in what circumstances a person who has disclaimed an interest in property
under the Uniform Disclaimer of Property Interests Act, codified at 14 V.S.A.
§§ 1951-1959, may revoke that disclaimer.  Agnes Carvalho
appeals the superior court’s summary judgment order precluding her from
revoking a disclaimer of her interest in her son’s estate.  Ms. Carvalho claims that the superior court erred in: (1)
ruling that disclaimers are irrevocable absent incompetence, duress, coercion,
or undue influence; (2) finding that there were no genuine issues of material
fact as to whether she was incompetent or under duress or coercion when she
executed the disclaimer; and (3) concluding that she had failed to properly
preserve the issue of whether the disclaimer described the subject property
with sufficient specificity to be valid.  We hold that while statutory
disclaimers are generally revocable only in limited circumstances, the superior
court erred by granting summary judgment to Ms. Carvalho’s
nephew, Robert Winkis (hereinafter nephew), who
opposed revocation of the disclaimer.  Accordingly, we remand the matter
for the court to hold a hearing on whether the circumstances warranted allowing
revocation of the disclaimer.  

¶ 2.            
We review decisions granting summary judgment de novo, using the same
standard as the trial court; we will uphold such decisions if there is no
genuine issue of material fact and the moving party is entitled to judgment as
a matter of law.  Field v. Costa, 2008 VT 75, ¶ 14, ___ Vt. ___, 958 A.2d
1164.  “The moving party has the burden of proof, and the opposing party
must be given the benefit of all reasonable doubts and inferences in
determining whether a genuine issue of material fact exists.”  Price v.
Leland, 149 Vt. 518, 521, 546 A.2d 793,
796 (1988); see also Fritzeen v. Trudell Consulting Eng’rs, Inc.,
170 Vt. 632,
633, 751 A.2d 293, 296 (2000) (mem.).

¶ 3.            
With that standard in mind, we examine the undisputed facts and identify
some of the disputed facts.  Agnes Carvalho was
a ninety-two-year-old widow when her son Donald, who was her only child and had
been living with her, unexpectedly died in December 2005.  The trial court
found that she “was deeply upset and distraught after Donald’s death.” 
Donald’s will left his estate to Ms. Carvalho unless
she predeceased him, in which case the estate would go to nephew.  Ms. Carvalho was the only non-contingent beneficiary in
Donald’s will, and nephew was the only contingent beneficiary in the
will.  Thus, as the trial court recognized, nephew was “the alternate
residuary legatee and the person who would benefit if Ms. Carvalho
were to disclaim her interest in Donald’s estate.”

¶ 4.            
Besides being a contingent beneficiary, nephew was named executor of
Donald’s estate, thereby making him a fiduciary to the estate and its
beneficiaries.  See In re Watkins’ Estate, 113 Vt. 126, 133, 30
A.2d 305, 310 (1943) (“In our law an executor is a person, or corporation
empowered to discharge the duties of a fiduciary, appointed as such by the
testator in his will.”).  As executor, nephew told Ms. Carvalho
that she needed to sign some paperwork for her son’s estate.  Three weeks
after Donald’s death, on January 11, 2006, nephew took Ms. Carvalho
to the office of the attorney representing him in his capacity as executor of
Donald’s estate.  According to Ms. Carvalho’s
deposition, she went because “I was told to go to a lawyer so I won’t lose my
property, so that’s why I went.”  As the superior court found, although
Ms. Carvalho had contacted that attorney’s office
before when Donald became sick, she had not previously met or done business
with the attorney.  Ms. Carvalho had, however,
talked with a paralegal in the attorney’s office and requested that the office
prepare for her a will, an advanced healthcare directive, and a financial power
of attorney.  Thus, the attorney understood that Ms. Carvalho
would on that day “sign her own will, and do an advanced directive and a
financial power of attorney” and other papers related to the estate.

¶ 5.            
In addition to signing other documents that the attorney had prepared
ahead of time, Ms. Carvalho signed the following
disclaimer, which, as the trial court found, had not been prepared or reviewed
by her in advance of the meeting: 

 
NOW COMES Agnes Carvalho, mother and interested
person of the deceased, Donald L. Carvalho, and
pursuant to the Vermont Uniform Disclaimer of Property Interest[s] Act 14
V.S.A. Chapter 83, hereby disclaims all right, title and interest held by me in
the Estate and to the following property devolving, passing or otherwise
distributing property to Robert Winkis the heir of
the decedent, at the death of Donald L. Carvalho, who
died on December 21, 2005:

 

  Assets:

 

The space after the word “Assets”
was left blank.  

¶ 6.            
In his deposition, the attorney explained the sequence of events and the
reason for the disclaimer.  The attorney first met together with nephew
and Ms. Carvalho to sign the estate papers.  Then
nephew left the room to allow the attorney and Ms. Carvalho
to discuss the other documents, particularly because nephew was the beneficiary
of Ms. Carvalho’s will.  The attorney
recommended the disclaimer as “Medicaid planning,” in view of the fact that
nephew was Ms. Carvalho’s beneficiary. 
Apparently, in the event Ms. Carvalho were to enter a
nursing home, the disclaimer would allow her to avoid having to sell her house
to pay for the nursing home before becoming Medicaid eligible.  The
disclaimer was then prepared by the attorney and signed by Ms. Carvalho.  The attorney saw the preparation of these
documents as “paperwork for the estate” and billed the estate for this
work.  Although nephew was not present when Ms. Carvalho
signed the disclaimer, he apparently signed the document later the same
day.  After nephew and Ms. Carvalho left the
attorney’s office, nephew had Ms. Carvalho add his
name to her bank accounts, but he did not resist her subsequent decision to
take his name off of those accounts.

¶ 7.            
In her deposition, Ms. Carvalho indicated that
she had no memory of signing the disclaimer or that she signed a will that
day.  She testified that the disclaimer “is supposed to be after I’m
gone.”  She also testified that she did not understand the disclaimer when
she signed it.

¶ 8.            
On April 3, 2006, before any of Donald’s assets had been distributed and
within the statutory nine-month time period for executing disclaimers of
inherited property following the testator’s death, see 14 V.S.A.
§ 1952(a), Ms. Carvalho executed a document
purporting to revoke the disclaimer and reassert her interest in Donald’s
estate.  As executor of Donald’s estate, nephew did not initially directly
oppose Ms. Carvalho’s attempt to revoke the disclaimer,
but filed a motion to appoint a guardian ad litem for
Ms. Carvalho to help with matters concerning the
estate, “including specifically, the attempt by Agnes Carvalho
to revoke the disclaimer.”  In support of the motion, nephew argued that
although Ms. Carvalho was not incompetent, she had
been “strongly influenced by neighbors . . . and due to her advanced
age, may not be making decisions that are in her long term best
interest.”  In September 2006, when nephew was no longer executor, he
formally objected to the disclaimer in the probate court.

¶ 9.            
Ms. Carvalho asserted in the probate court
that “suspicious circumstances” concerning the execution of the
disclaimer—including nephew’s involvement in facilitating his
ninety-two-year-old aunt’s signing of a document that would give him
$380,000—supported revocation.  She acknowledged that the person claiming
undue influence ordinarily has the burden to prove it, but argued that the
burden should shift to the other party when there are suspicious circumstances,
such as when an estate fiduciary puts himself in a position to benefit
financially from a disclaimant’s action.  In a
two-page order, the probate court denied Ms. Carvalho’s
request to allow the revocation, stating briefly that there was little evidence
regarding duress or coercion, other than Ms. Carvalho’s
statement that she was distraught over the death of her son.

¶ 10.        
Ms. Carvalho appealed to the superior court,
listing as questions for review (1) whether the probate court erred by ruling
that disclaimers are irrevocable absent a showing of incompetence, undue
duress, or coercion, and (2) whether the circumstances surrounding the
execution of the disclaimer in this case supported revocation of the
disclaimer.  In her motion for summary judgment filed with the superior
court, Ms. Carvalho argued that the circumstances,
including her advanced age, the recent unexpected death of her son, the lack of
an opportunity to review the disclaimer or consult with an attorney, and her
failure to fully understand the repercussions of the document—coupled with her
sworn affidavit—warranted allowing her to revoke the disclaimer.  Among
other things, Ms. Carvalho stated in her affidavit
that her nephew, who stood to benefit from her signing the disclaimer, took her
to his attorney’s office, telling her that she needed to sign some
documents.  According to her affidavit, she did not understand that the
document she was signing would transfer assets she would inherit from the
estate to her nephew during her lifetime.

¶ 11.        
Relevant to this point, the deposition testimony Ms. Carvalho
gave in response to questions from nephew’s attorney was as follows:

Q: Did anybody
force you or coerce you to sign your name there on [the disclaimer]?

 

A: No.

 

Q: You did it
willingly; is that right?

 

A: I must have.

 

. . . 

 

Q: But no one
forced you [to] do it, you signed that willingly?

 

A: I don’t
know.  It’s my signature.

 

. . . 

 

Q: Were you under
any undue influence when you signed [] the disclaimer . . . ?

 

A: No
influence.  No, I guess it’s my own knowledge of nothing; you know, I
didn’t understand it.

 

Q: But you signed
it anyway?

 

A: No.

 

¶ 12.        
The superior court apparently relied upon this testimony in concluding
that Ms. Carvalho was not coerced or unduly
influenced, and that nephew was entitled to judgment as a matter of law, even
assuming Ms. Carvalho was mistaken as to the legal
effect of her disclaimer.  Indeed, the court granted summary judgment to
nephew even after finding that “there are facts in dispute about how much Ms. Carvalho understood,” and that “she does not appear to have
understood that the effect” of the disclaimer was to deprive her of the assets
of her son’s estate during her lifetime.

¶ 13.        
Before considering whether summary judgment is appropriate under these
circumstances, we address Ms. Carvalho’s arguments
that (1) the disclaimer was invalid because it did not sufficiently describe
the property to be disclaimed, and (2) revocation of a disclaimer should
generally be allowed when the revocation is made within the statutory time
period for making disclaimers and no party has been prejudiced through previous
distribution of the property being disclaimed.

¶ 14.        
Regarding the first issue, we need not decide whether the superior court
should have ruled on the sufficiency of the description of the property to be
disclaimed.  The superior court refused to rule on the issue because Ms. Carvalho failed to list it among the questions submitted to
the superior court for consideration following the probate court’s
decision.  Irrespective of whether the issue was properly raised before
the superior court, we conclude that the subject disclaimer was plainly valid
with regard to the specificity of the named property interest.  Ms. Carvalho disclaimed “all right, title and interest” in
Donald’s estate in the body of the disclaimer.  This was sufficient for
purposes of 14 V.S.A. § 1953(1), which does not require a list of
particular assets to be disclaimed, but rather provides only that the
disclaimer shall “describe the property or interest disclaimed.”  The fact
that the disclaimer was drafted with a space where specific assets could be
listed is of no consequence.

¶ 15.        
Regarding the issue of revocation, the Legislature has established a
statutory right to disclaim interests in property.  14 V.S.A.
§ 1951.  Persons wishing to disclaim interests in property devolving
to them by will or intestate succession may do so in writing within nine months
of the owner’s death.  Id. § 1952(a).  Significantly, the
disclaimer “is binding upon the disclaimant,” id.
§ 1954(c), and the disclaimed property passes “as if the disclaimant
had predeceased the decedent,” id. § 1954(a).

¶ 16.        
The statute governing disclaimers of property interests in Vermont is a
codification of the Uniform Disclaimer of Property Interests Act (UDPIA). 
Some form of the UDPIA has been enacted in at least nineteen states.  In re Estate of Highfill, 839 N.E.2d 218, 222 n.1 (Ind. Ct. App. 2005).  In
adopting the UDPIA, the Legislature specifically commanded that it “be
applied and construed to effectuate its general purpose to make uniform the law
with respect to the subject of this chapter among states enacting it.”  14
V.S.A. § 1958.  We have yet to interpret these statutes as to the question
of whether, and, if so, when, disclaimers may be revoked.  Accordingly, we
look at the outset to how other states that have adopted the UDPIA handle the
revocation of disclaimers.  See Dicks v. Jensen, 172 Vt. 43, 46, 768 A.2d 1279, 1282 (2001) (stating that
when statute is intended to “make uniform the law among states enacting it” we
will “draw from the decisions of our sister states” (quotation omitted)).

¶ 17.        
Few courts have considered whether or when disclaimers are revocable
under the UDPIA.  In Fleenor
v. Williamson, 17 P.3d 520, 525 (Or. Ct. App. 2000), an intermediate
appellate court in Oregon held that under the UDPIA, a disclaimant
could not revoke a disclaimer based on a unilateral mistake of law.  In Highfill, an intermediate appellate court in Indiana held that
appellant’s disclaimer of insurance proceeds under Indiana’s UDPIA was valid
and irrevocable, and went on to consider a claim that the disclaimer was
invalid as fraudulently induced.  839 N.E.2d at 224.  The Highfill decision is of less assistance to us than Fleenor, however, because the Indiana statute
expressly provides that disclaimers are irrevocable, id. at 224
(citing Ind. Code § 32-17.5-3-5), and because there is no claim of fraud
presented in the case before us.

¶ 18.        
Courts evaluating the question under statutory schemes similar, albeit
not identical, to the UDPIA are in accord with Fleenor
and Highfill, at least insofar as they indicate
that something more than a mistake of law is necessary to support the
revocation of a statutory disclaimer.  In Estate
of Holden v. Holden, a South Carolina
appellate court held that a mistake of law will not justify the revocation of a
disclaimer.  520 S.E.2d 322, 325 (S.C. Ct. App. 1999).  Likewise, in Webb
v. Webb, the Supreme Court of West Virginia held that a negligent mistake
of law on the part of the disclaimant and a negligent
mistake of fact on the part of his attorney do not separately or together
support the revocation of a disclaimer.  301
S.E.2d 570, 576-77 (W. Va. 1983).

¶ 19.        
Ms. Carvalho correctly points out that New
York’s Surrogate Courts, which are analogous to our probate courts, have
allowed beneficiaries to retract their renunciation of testamentary gifts
absent prejudice to other beneficiaries.  However, these decisions, which
long pre-date the UDPIA, concern common-law renunciation of property rights as
opposed to statutory disclaimers.  See, e.g., In
re Angel’s Will, 225 N.Y.S.2d 419, 421
(Sur. Ct. 1962); In re Johnston’s Will, 298 N.Y.S. 957, 961 (Sur. Ct.
1937).  Moreover, with regard to statutory disclaimers, lack of prejudice
alone has been held to be insufficient to support revocation.  See In re Ciaffoni, 2001 PA Super. 314, ¶¶ 7-9, 787 A.2d 971 (holding that
statutory disclaimers are irrevocable even when other beneficiaries would not
be prejudiced by the revocation).

¶ 20.        
Ms. Carvalho argues
that In re Estate of Berg, 355 N.W.2d 13 (S.D. 1984), supports the position
that revocation is allowable in situations where the revocation occurs within
the statutory period for filing the disclaimer and where no prejudice to others
would result.  Indeed, in Berg, the Supreme Court of South Dakota
so held.  Id. at 15.  We are not persuaded by Berg for
two reasons, however.  First, although the statute at issue in Berg
expressly provided that disclaimers were “irrevocabl[e],”
the court reasoned that the statutory “silence” on the issue did not preclude
revocation.  Id. at 14-15.  Second, the Berg court
based its decision on a cursory survey of case law dealing with the statutory
right of a surviving spouse to choose whether to take under the will or under
the statute.  We are not persuaded that the Berg court gave
adequate weight to the statutory language or conducted a review of relevant
precedent, and thus we decline to follow it.

¶ 21.         Considerations
of uniformity aside, however, we further conclude that the plain meaning of the
statutory language precludes revocation.  When interpreting statutes, we
generally look first and foremost to the statute’s plain meaning.  Smith
v. Desautels, 2008 VT 17, ¶ 18, 183 Vt. 255, 953
A.2d 620.  In this case, the statute proscribing the effect of disclaimers
states that a disclaimer “is binding upon the disclaimant
. . . and all persons claiming through or under him or her.”  14 V.S.A.
§ 1954(c).  Moreover, the Legislature provided no method for revoking
disclaimers, which is indicative of a legislative intent to preclude revocation. 
See Ciaffoni, 2001 PA Super. 314, ¶ 9 (reasoning that statutory
language providing that “the disclaimer shall be binding on the disclaimant” precludes disclaimant
from revoking disclaimer); Fleenor, 17 P.3d at
524 (citing UDPIA’s silence on revocation and its
provision that disclaimers are “binding” on the disclaimant
in support of its holding that disclaimers are irrevocable).

¶ 22.        
Furthermore, the statute instructs that a disclaimant
should be treated as if he or she had predeceased the decedent.  14 V.S.A.
§ 1954(a) (providing that “the property or interest devolved to a disclaimant under testamentary instrument or under the laws
of intestacy . . . devolves as if the disclaimant had
predeceased the decedent”).  This statutory
language precludes the revival of the disclaimant’s interest by revocation because the
property interests of a deceased person are extinguished.  As the court in
Ciaffoni stated:

where the disclaimant has
absolved himself of any interest that was properly his by will or intestate
succession, the disclaimant is deemed to have
predeceased the decedent.  Like the pre-deceased who, by operation of
death, is precluded from asserting a claim against a decedent’s estate, the disclaimant may not rise some time later to assert his
rights as beneficiary.

 

2001 PA
Super. 314, ¶ 10 (citation omitted).

¶ 23.        
The irrevocability of disclaimers promotes stability in property
interests.  A disclaimer would not be final, and property interests would
be correspondingly unsettled, so long as a disclaimant
could revoke.  The Fleenor court
expressed a similar concern: “Permitting ‘equitable’
revocation of disclaimers, with concomitant ‘divesting’ of interests, would
transform the [UDPIA’s] precise exceptions into a
sort of wildcard, contradicting the statutory scheme’s clear and certain
application.”  17 P.3d at 525.

¶ 24.        
In summary, disclaimers under our statutory
scheme are irrevocable based on claims, such as a unilateral mistake of law,
that fall short of equitable claims that would support rescission of a contract
or cancellation of an instrument.  On the weight of the case law,
by virtue of our statutory text, and out of concern for the stability of
property rights, we hold that disclaimers are not revocable based on disclaimant’s mistake of law or simply because the
revocation is filed within the statutory time period for filing disclaimers,
even if there is no prejudice.

¶ 25.        
Having determined that the instant disclaimer was valid, and that
disclaimers generally may not be revoked even within the statutory time frame
for making disclaimers and in the absence of prejudice, we now return to the
question of whether revocation is available in any circumstances, and, if so,
whether the superior court erred in granting summary judgment in this
case.  A disclaimer of property interests, and any subsequent revocation
of that disclaimer, is similar to the execution or alteration of a will, in the
sense that it typically directs the distribution of assets upon the death of a
testator.  Nephew has not argued, and no court of which we are aware has
held, that a disclaimer may never be revoked, even in situations involving
incompetence, fraud, undue influence, or other accepted bases for cancellation
of instruments.  Indeed, although there is little case law describing the
circumstances under which a disclaimer of interests by interstate succession
may be set aside, “authority from other jurisdictions indicate that such cases
are governed by the equitable principles relating to rescission or reformation
of contracts and cancellation of instruments generally.”  Webb, 301
S.E.2d at 574; cf. Holden, 520 S.E.2d at 325 (relying on general rules
of equity in determining that mistake of law, “in the absence of fraud or undue
influence,” would not permit revocation of disclaimer).  Accordingly, if
the fact finder on remand in this case were to find undue influence, coercion,
or incompetence, revocation of the disclaimer would be warranted, particularly
given that it was executed within the statutory time frame for disclaimers and
before any property interests were affected.

¶ 26.        
In the analogous context discussed above, the person challenging the
will normally has the burden of demonstrating the existence of undue
influence.  In re Estate of Raedel, 152
Vt. 478, 481, 568 A.2d 331, 333 (1989).  The burden of proof shifts to the
proponent of the will, however, “when the circumstances connected with the
execution of the will are such as the law regards with suspicion.”  Id.
(quotation omitted); In re Guardianship of Knepper,
856 N.E.2d 150, 154 (Ind. Ct. App. 2007) (recognizing that “when a fiduciary
relationship exists and the fiduciary benefits from a questioned transaction, a
presumption of undue influence arises and the burden shifts to the fiduciary to
rebut the presumption”).  Thus, where suspicious circumstances are
present, “the will is presumed to be the product of undue influence, and it
will not be enforced unless the proponent persuades the trier
of fact that no undue influence attended the execution of the will.”  Raedel, 152 Vt. at 481-82, 568 A.2d at 333.  We
see no reason not to apply the same principle in cases involving the execution
or revocation of disclaimers of property interests, particularly in the context
of the disclaimer of an inheritance.

¶ 27.        
The trial court determines whether suspicious circumstances exist “only
to establish the burden of proof on the ultimate issue of undue
influence.”  Id. at 483, 568 A.2d at 333 (quotation omitted). 
“Suspicious circumstances are typically present where a testator’s fiduciary
benefits in the will.”  Id. at 483, 568 A.2d at 334.  In Raedel, we noted that the presumption of undue
influence “does not apply where the beneficiaries are children or
grandchildren,” and we further expressed a reluctance “to presume undue
influence when the relationship between testator and beneficiaries is one
between aunt and nieces and nephews, at least where the beneficiaries do not
assist in preparing the will.”  Id. at 484, 568 A.2d at 334
(emphasis added).  Thus, we found no suspicious circumstances as a matter
of law in that case where the nieces and nephews who were to benefit from the
will had not assisted in preparing the will and were not in a preexisting
fiduciary relationship, such as a guardian, with the testator, their
aunt.  Id.

¶ 28.        
In our analogous situation involving a disclaimer, the disclaimant is the equivalent of the testator.  In
this case, nephew was the contingent beneficiary and the executor, and thus a
fiduciary of Donald’s estate—the estate that is the subject of his aunt’s
disclaimer.  Further, the facts suggest that nephew facilitated Ms. Carvalho’s disclaimer of her non-contingent interest in the
estate by bringing her to the office of the estate’s attorney to sign the
disclaimer, which she had not seen before.  The attorney testified at his
deposition that he considered Ms. Carvalho to be his
client, but he billed the estate for his services in having her execute the
disclaimer.  Thus, not only was the execution of the disclaimer
facilitated by the contingent beneficiary of the estate, but the attorney who
presented the disclaimer to Ms. Carvalho appeared to
be representing the interests of parties with potentially conflicting
interests.  These facts amount to suspicious circumstances as a matter of
law, which places the burden on nephew to establish affirmatively that the
disclaimer was not procured by undue influence or coercion.  Cf. Haynes
v. First Nat’l State Bank of N.J., 432 A.2d 890, 901-02 (N.J. 1981)
(holding that because attorney who prepared will represented both testator and
principal beneficiary and because there was no proof that attorney disclosed
conflict of interest to testator, will’s proponent had burden of overcoming
presumption of undue influence).

¶ 29.        
Generally, “[u]ndue influence vitiates a
devise or gift because of the concern that the testator or donor had done
something contrary to his ‘true’ desires.”  Landmark Trust (USA), Inc.
v. Goodhue, 172 Vt. 515, 525, 782 A.2d 1219, 1228 (2001) (quotation
omitted).  “Any species of coercion, whether physical, mental, or moral,
which subverts the sound judgment and genuine desire of the individual, is
enough to constitute undue influence.”  Id. at 524, 782 A.2d at
1228 (quotation omitted).  The existence of any conflict of interest in
the attorney presenting a document for execution is a factor in determining
whether undue influence or coercion existed.  Cf. Tutun
v. Myers, 2003 WL 76800 (Mass. App. Ct. Jan. 9, 2003) (stating that thrust
of conflict-of-interest claim would be to support claim of undue influence).

¶ 30.        
Moreover, although a unilateral mistake of law may not normally be the
basis for allowing revocation of a disclaimer, the disclaimant’s
misunderstanding of the legal effect of a disclaimer in the context of
suspicious circumstances may be a critical factor for the fact finder to
consider in determining whether there was duress, coercion, undue influence or
some other equitable basis for allowing revocation.  In other words, the disclaimant’s misunderstanding of the legal effect of the
disclaimer, when suspicious circumstances are present, may inform the fact
finder’s determination as to whether the disclaimant’s
sound judgment or true desire was overcome through coercive tactics.

¶ 31.        
As noted above, in determining whether the moving party has demonstrated
the absence of any genuine issues of material fact that would preclude summary
judgment, the court must give the opposing party “the benefit of all reasonable
doubts and inferences.”  Price, 149 Vt. at 521, 546 A.2d at
796.  Viewing the facts from the opposing party’s perspective, this case
concerns an estate fiduciary advocating, either himself or through his
attorney, for the estate’s ninety-two-year-old beneficiary to sign a
disclaimer, three weeks after the unexpected death of her son, that would
effectively transfer the assets of the estate from the beneficiary to himself
as the estate’s contingent beneficiary.  Further, as the superior court
found, the non-contingent beneficiary signed the disclaimer, which had not been
prepared beforehand, without understanding its consequences and without being
given an earlier opportunity to review it herself or with another attorney.

¶ 32.        
We emphasize that we are not suggesting that the superior court must
allow revocation on remand; rather, we conclude only that the facts of this
case preclude summary judgment in favor of nephew.  As noted, the facts
establish “suspicious circumstances” that impose upon nephew the burden of
showing the absence of undue influence or coercion with respect to Ms. Carvalho’s signing of the disclaimer.  On remand, the
fact finder must determine, following an evidentiary hearing, whether nephew has
met his burden of demonstrating a lack of undue influence, duress, or coercion
with respect to Ms. Carvalho’s signing of the
disclaimer.  Nephew may rebut the presumption of undue influence by
establishing “that the transaction was fair and equitable,” and that he, both
directly and through his attorney, “acted in good faith, [and] did not take
advantage of [his] position of trust.”  Knepper,
856 N.E.2d at 154; cf. In re Marriage of Pagano,
607 N.E.2d 1242, 1247-48 (Ill. 1992) (noting nonexclusive factors, all bearing
on fairness of transaction, in determining whether presumption of undue
influence has been rebutted).  In assessing whether nephew has met this
burden, the court should consider the effect of the attorney obtaining the
disclaimer from Ms. Carvalho, his client, while
acting as attorney for the estate and its executor.  If the fact finder
determines that nephew has failed to meet his affirmative burden, the court
shall allow Ms. Carvalho to revoke the
disclaimer.  If, on the other hand, the fact finder determines that nephew
has met his burden of demonstrating a lack of undue influence or coercion, the
court shall disallow the revocation.  In any event, the issue cannot be
decided on summary judgment.

Reversed and remanded.


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate Justice